# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **BARRY M. DALTON,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | **CIVIL ACTION NO. 5:06-0381** |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's Application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion to Remand on June 27, 2007 (Document No. 15.), Defendant's Brief in Support of Judgment on the Pleadings filed on August 27, 2007 (Document No. 19.) and Plaintiff's Response to Defendant's Brief in Support of Judgment on the Pleadings filed on September 5, 2007 (Document No. 20.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Barry M. Dalton (hereinafter referred to as "Claimant"), initially filed an Application for DIB and SSI benefits on November 14, 2003, alleging disability as of August 7, 2002, due to "back injuries, abdominal, past traumatic stress syndrome injuries." (Tr. at 67 - 69, 75, 498 - 500.) The claims were denied initially and upon reconsideration. (Tr. at 37 - 41, 43 - 45, 502 - 506, 508 - 510.) Claimant requested a hearing before an ALJ (Tr. at 46.), and the hearing was held on August 1, 2005, before the Honorable Brian P. Kilbane. (Tr. at 518 - 535.) By Decision dated November 18, 2005, ALJ Kilbane determined that Claimant was not entitled to benefits. (Tr. at 18 -

27.) Claimant requested review of the ALJ's Decision, and the ALJ's decision became the final decision of the Commissioner on March 28, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4 - 5.) On May 17, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The burden of demonstrating objective evidence of disability rests initially with the Claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)("The applicant bears the burden of production and proof during the first four steps of the inquiry.").The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner to prove that the claimant is

nevertheless capable of performing substantial gainful activity, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads therefore to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (1999). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

>which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06, provides essentially the same framework for determining the severity of anxiety related disorders.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because though he had engaged in work activity after August 7, 2002, when he alleges he became unable to work, it was not evident that he had engaged in substantial gainful activity. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant's disorder of the spine was a severe impairment and "[t]he evidence of record does not establish the existence of any other severe physical or mental impairment." (Tr. at 20 - 24.) At the third inquiry, the ALJ concluded that Claimant's medically determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1, Subpart P, Regulation No. 4. (Tr. at 24.) The ALJ then found that Claimant had the residual functional capacity "to perform a wide range of work at the medium level of exertion. The claimant should avoid hazards such as unprotected heights and moving machinery. However, he can

5

lift fifty pounds occasionally and twenty-five pounds frequently, can stand/walk about six hours in an eight hour workday, can sit about six hours in an eight hour workday, and is unlimited in pushing/pulling. No other significant postural, manipulative, visual, communicative, or environmental limitations are found to exist." (Tr. at 24 - 26.) The ALJ found that "claimant is capable of performing past relevant work as a truck driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 26.) On this basis, benefits were denied. (Tr. at 26 - 27.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). In Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005), the Fourth Circuit stated the standard which Courts must apply in reviewing social security decisions as follows quoting from its prior decision:

> "This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g) . . . ." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "' Under

the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Id., (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Id. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (Internal quotation marks omitted.)

Claimant's Background

Claimant was born on July 28, 1959, and was 46 years old at the time of the administrative hearing, February 10, 2004. (Tr. at 64, 521.) Claimant obtained a General Equivalency Diploma. (Tr. at 81, 521.) In the past, he worked as a truck driver and for the Department of Corrections and was in the military. (Tr. at 76, 521 - 523.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

It appears that Claimant is asserting that ALJ Kilbane's findings respecting Claimant's credibility are not consistent or fully in conformity with the applicable legal standard. Claimant states that the ALJ generally found that he was not credible and yet he found that he was credible with respect to his psychological issues. Claimant states that "the question is if [he] is unreliable on all other matters how can he be seen as reliable and credible on his psychiatric treatment? This inconsistency is further compounded when one realizes that the presiding ALJ was 'cherry picking' the consultative examiner's report." Claimant asserts that the ALJ "relied heavily" on the evaluation of Dale Rice, M.A., and did not address "inconsistencies or the conflicts in Dale Rice's report" as

between Mr. Rice's diagnosis and his assessment of Claimant's functioning. Thus, Claimant contends that "the presiding ALJ acted as an expert . . . by emphasizing some parts of Dale Rice's evaluation while de-emphasizing others." (Document No. 16, pp. 3 - 5.) Finally, it appears that the Claimant is asserting that ALJ Kilbane did not consider or take into account his use of an ankle brace at the administrative hearing and only mentioned it in assessing whether Claimant could perform his past work as a truck driver in his written decision. Claimant states that "[t]he fact that said limitation mentioned in [the ALJ's written decision] was not discussed in the August 1, 2005, hearing seems to be an inconsistency that was not accounted for in the presiding ALJ's decision and if taken to a logical extreme would pose not only a difficulty in the Plaintiff doing said vocation, but also a safety hazard." (Id., pp. 5 - 7.)

The Commissioner asserts that "[t]he ALJ gave a thorough explanation of his rationale for denying Plaintiff's claim, including a concise statement of facts and a clear statement regarding the conflicts in the record. Most importantly, the ALJ acknowledged the scant, yet negative evidence regarding Plaintiff's long-standing ankle impairment and provided a well-reasoned explanation for his evaluation of Plaintiff's mental impairment. Simply put, Plaintiff failed to persuade the ALJ that he was disabled on or before November 18, 2005, the date of the ALJ's decision." (Document No. 19, p. 7.)

In his Response (Document No. 20.), Claimant states that "the Plaintiff's argument is that the Plaintiff's mental impairment may or may not be 'severe' but it is inappropriate for the Administrative Law Judge to rely on self reporting once the Administrative Law Judge finds that Plaintiff's credibility is lacking."

8

## ANALYSIS

### I.   ALJ's Assessment of Claimant's Credibility.

While a claimant's credibility may become a factor in determining his or her eligibility for social security benefits at level two of the sequential analysis in determining whether he or she suffers from one or more severe impairments, it is an important factor at level four in determining his or her residual functional capacity in view of his or her symptoms and/or pain. A two-step process is used to determine whether a claimant is disabled by symptoms/pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which it affects a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (1999). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations

by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

    (i) Your daily activities;

    (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

    (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999.

SSR 96-7p repeats the two-step regulatory provisions:

    First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
the symptoms cannot be found to affect the individual's ability to do basic work activities.

    Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical

> evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p provides further as follows:

> Policy Interpretation: A symptom is an individual's own description of his or her physical or mental impairment(s). Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain or other symptoms has been established, adjudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered if a fully favorable determination or decision cannot be made solely on the basis of objective medical evidence. If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

Significantly, as stated above, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

ALJ Kilbane's determination respecting Claimant's credibility is clearly in conformity with the applicable law and Regulations. He found at level four of the sequential analysis and step one of the symptoms/pain analysis that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." He then stated that "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible; and, the inconsistencies in his statements further detract from his credibility." (Tr. at 25.)

ALJ Kilbane went on to point out several inconsistencies in Claimant's statements as he found them in the record. (Tr. at 25 - 26.)

Claimant contends that ALJ Kilbane was inconsistent in relying upon statements which Claimant made to a clinical social worker at VAMC in September, 2002[2], and to examining psychologist Dale Rice in January, 2004, respecting his treatment for mental problems at VAMC as related by Mr. Rice in his Psychological Evaluation[3] and then finding him generally less than credible. ALJ Kilbane properly considered Claimant's statements to treating and consultative medical sources along with other evidence of record at level two of the sequential analysis in determining the severity of Claimant's mental and physical impairments and concluded that "[a]s there has been no showing made that the claimant has a mental impairment that has resulted in functional limitations which have lasted or are expected to last for a continuous period of at least 12 months as required by the regulations, no severe mental impairment is found to exist." (Tr. at 21 - 24.) ALJ Kilbane made no assessment of the credibility of Claimant's statements about his psychological treatment. Actually, Claimant's statements are consistent with the factual evidence, and, as ALJ Kilbane noted (Tr. at 24.), he further confirmed that he was not in need of treatment for psychological problems at the administrative hearing. (Tr. at 528.) The Court therefore finds that ALJ Kilbane's decision rests primarily upon his consideration of the medical evidence of record,

---

[2] The record contains the note of a social worker at Beckley VAMC stating that "[h]e stated he has been doing better on the medication. . . . He did not feel he needs to pursue counseling at this time, but will continue [to follow up] with the psychiatrist. He will contact the clinic should he need counseling in the future." (Tr. at 341.)

[3] Mr. Rice stated in his report that "Mr. Dalton reports seeing a psychiatrist through the Veteran's Hospital for approximately one year for fear related to the reported motor vehicle accident. He stopped four or five months ago due [sic] 'I told them I was getting better, my fears was diminishing . . . I didn't need it.'" (Tr. at 219.)

not on his assessment of Claimant's credibility. Having examined the record thoroughly, the Court can find no inconsistency factually or legally in ALJ Kilbane's consideration of the evidence and the conclusions he reached based upon it respecting Claimant's psychological problems.

## II.     The ALJ's Consideration of the Opinion of Dale Rice, M.A.

Claimant contends that ALJ Kilbane did not consider psychologist Dale Rice's diagnosis of "Anxiety Disorder NOS" and finding that he was moderately deficient in social functioning. Rather, Claimant asserts, "the presiding ALJ acted as an expert . . . by emphasizing some parts of Dale Rice's evaluation while de-emphasizing others."

The Court finds that ALJ Kilbane did not mention Mr. Rice's diagnosis of "Anxiety Disorder NOS", but it is clear that he found that Claimant had a medically determinable mental impairment within the period of time within which Claimant claimed to be disabled from the fact that he considered evidence respecting the degree of functional limitation resulting from the impairment. The ALJ clearly considered Mr. Rice's finding that Claimant was moderately deficient in social functioning. He noted that Mr. Rice "indicated that this was based on interaction during the evaluation, in that the claimant provided excessive amounts of information when a shorter response would have sufficed and had to be redirected to remain on topic (Tr. at 23.) ALJ Kilbane took this directly from Mr. Rice's Evaluation (Tr. at 221 - 222.). Mr. Rice also found that Claimant's concentration, persistence and pace were within normal limits. (Tr. at 222.) The ALJ clearly rejected Mr. Rice's opinions respecting Claimant's limitations in functioning and adopted the July 31, 2004, opinion of DDS Psychiatrist Dr. Debra Lilly that Claimant had no more than mild limitations in any area of functioning. (Tr. at 23.) Dr. Lilly's opinion was based upon her consideration of evidence which is in the record in this case including Mr. Rice's Psychological Evaluation. (Tr. at 463 - 476.) She found that Claimant had a medically determinable affective disorder (Tr. at 466.) and concluded

13

that "[t]he preponderance of the evidence in file does not support severe functional limitations from a mental disorder." (Tr. at 475.) The Court notes that even if ALJ Kilbane had accepted Mr. Rice's finding of a moderate limitation in social functioning and Dr. Lilly's finding of mild limitations in the other categories, Claimant's mental impairment would still not qualify as severe under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 and 12.06 as mentioned above. The Court finds that ALJ Kilbane determined that Claimant did not have a severe mental impairment in view of opinions and evidence in the record and did not reach this conclusion independently on the basis of clinical findings as an expert would. His decision is in conformity with applicable regulations and law and supported by substantial evidence.

### III.     ALJ's Consideration of Claimant's Use of an Ankle Brace.

In January, 2005, an ankle brace was recommended when Claimant complained of chronic right ankle pain. (Tr. at 481.) The Court finds nothing in the record indicating whether Claimant actually used an ankle brace and, if so, whether doing so relieved his right ankle pain. It is further not evident that his use of an ankle brace on his right ankle would interfere with his ability to perform work at the medium level of exertion. Claimant had the burden of proving by objective evidence that he was disabled or his ability to perform activities was limited as a consequence of his ankle pain notwithstanding his use of an ankle brace. It does not appear from the record that Claimant met his burden. At the August 1, 2005, administrative hearing, Claimant's attorney asked him what devices he was using, and Claimant mentioned his cane and his back brace. (Tr. at 524, 527.) Claimant did not mention an ankle brace. ALJ Kilbane presented a hypothetical question to a vocational expert which assumed a person at the medium level of exertion and included a limitation upon Claimant's ability to climb ropes, ladders and scaffolds. (Tr. at 531.) The vocational expert testified that jobs existed at the light unskilled level which Claimant could perform and Claimant could work as a truck

driver, a job at the medium level of exertion, as he had. (Tr. at 531 - 532.) Claimant's attorney then asked the vocational expert to consider Claimant's use of a cane, and the expert indicated that Claimant could do the assembly and inspector job but might not be able to work as a correctional officer or postal clerk as he had and "there could be some problems" in his performing some of the work of a truck driver. (Tr. at 532 - 535.)

In his November 18, 2005, decision, in addition to considering Claimant's complaints of neck, shoulder and right hip and leg pain, ALJ Kilbane considered Claimant's complaints respecting his right ankle at level two of the sequential analysis summarizing the evidence in the record as follows (Tr. at 23.):

> On November 24, 2004, the claimant was seen at Beckley VAMC . . .. He . . . alleged a history of right ankle trauma. * * * X-rays of the right ankle were negative for fracture or dislocation. On January 11, 2005, the claimant was seen with complaints of right ankle pain off and on since 1978. There was mild swelling, but no effusion, discoloration, weakness, or laxity of the joint or neurovascular deficits. Although no gross abnormalities of x-ray or clinical findings were seen, and ankle brace and continued use of cane activity as tolerated was recommended.

Thus, ALJ Kilbane considered the evidence of record and found that Claimant's ankle pain and other conditions were not "shown to be more than a slight abnormality or to have caused significant limitations which have lasted a continuous period of at least twelve months, as required to meet the durational provisions of the Regulations." ALJ Kilbane therefore concluded that "they do not meet the criteria of a 'severe' impairment." Id. The Court finds ALJ Kilbane's consideration of Claimant's right ankle pain and the recommendation that he use an ankle brace fully in conformity with the applicable law and regulations and supported by substantial evidence. Claimant's assertion to the contrary is without merit.

Having determined that the grounds which Claimant asserts in this case for remand are without merit and having thoroughly examined the entire record in this case for error, the Court finds

nothing which might lead to a different conclusion than that which ALJ Kilbane reached in his decision. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000)(finding that remand is unnecessary "if it will amount to no more than an empty exercise."); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

Accordingly, the Court finds that the Commissioner's decision that Claimant is not entitled to DIB OR SSI is in conformity with all applicable legal standards and supported by substantial evidence of record. By Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 15.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 19.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

ENTER: March 19, 2008.

R. Clarke VanDervort
United States Magistrate Judge